No. 24-2942. And we will begin with you, Mr. Schweitzer. Good afternoon, Your Honors. Mark Schweitzer of the Federal Defender's Office representing At this time, I would like to reserve three minutes for rebuttal. Granted. Thank you. This case has been substantially narrowed in the briefing, leaving two issues in dispute. The first being whether the factual basis for the guilty plea here is plainly insufficient. And the second being whether there is a double jeopardy bar to further prosecution if, in fact, the factual basis is insufficient on this particular charge. Unless the court directs otherwise, I'll start with the factual basis. So, of course, there are two components to the factual basis issue, one being what does the statute require and the other being what does the factual basis provide. Let's talk about what the statute requires. If there is a competitive advantage to a particular bidder as a result of information in a prior submission, why doesn't that relate to the pending contract? Well, because competitive advantage is not the end-all, be-all of relation. So we have here – we agree with the government that this basically comes down to the word relate in the statute. And we have – Hold one second. We're having some technical difficulties. Let's go. Give it a go. This will not be counted against your time. I have time to think about the answer. This happens on Broadway, too. Okay. Is it correction? No. What if we turn off our microphones and just use our voices? I'm willing to try. Hold on one second. Hold on one second. Yes. Test seems to work. Very good. So you were talking to us about the term relates. Correct. And is your argument that there's a difference between something that relates to something else versus to which a subject relates? Yes. So competitive advantage, I think, was the question and whether that essentially equates with information relating. And the answer is no because competitive advantage or sort of quid pro quo is what makes a PIA violation criminal as versus civil. So with that additional requirement, it goes into the realm of a criminal violation, right? But when we look at PIA itself, relation is the touchstone in both the civil and the criminal context. So the circumstance of competitive advantage or receipt in relation for something else to the discloser, that can't define relate because the statute exists independently in the civil realm. But the government makes the argument that relates is a very broad term. It's capacious. It includes things like pertains to, right? I mean something that bears on something else, has some connection. And if so, that might seem to sweep in things like brings a competitive advantage because it's material. The phrasing of the statute is not relates to something, it's to which something relates. Is that an important distinction in the test of statute or is it without a difference? I don't think the phrasing of relation matters in the statute, but we do agree that relates can be broad, it can be narrow. So relates alone doesn't answer the question. Now, the government cites dictionary definitions and the definitions they cite are associated or connected. I don't think that really moves the needle in terms of broad or narrow. I think it's the context that controls. And the context here, two things. First of all, I would be remiss if I did not mention right off the bat, the law is on our favor on this point, right? So abacus says relates means it has a very narrow definition. Let's stay with the definition of the statute before we start moving to case law. I understand Judge Krause's point to be what part of the statute are we focusing on here? Because if it relates, a lot of things are related to the contracting process. And I think an ordinary understanding of related would certainly include the information that is in that first bid. 31 pages of pricing and data and proprietary information and techniques and bid prices, all that's somehow related. The question is, is related to what? And that's what I understood your argument to be. Is it related to the second bid or is it related to something more general in the contracting process? Well, my argument is twofold. It must relate to the SU-25, which is the procurement that is at issue here. And so I do believe we're putting the rabbit in the hat somewhat when we just say relate is necessarily a broad term. It really isn't. The Supreme Court, I pointed out in the Ford case recently, said this can have real limits. It depends on the context. So when we look at the context of PIA, this is really important because everything points to backing the abacus court points to a rather narrow definition. First of all, PIA's time limit is admittedly – the prohibition in PIA on time limit is admittedly narrow. As soon as the contract is awarded, whatever, however confidential the information is, PIA does not protect it. So, of course, the company doesn't want its confidential information disclosed at any time, right? It's proprietary information. But PIA is narrow. The temporal limitation is clear on the face of the statute. But we're talking about certain kinds of information, right? It's the proposal information, source selection information. And then it's before the award of a federal agency procurement contract to which the information relates. I think your argument is that that's the context. We're looking at the contract to which the information relates. Correct. And the whole issue on the merits is relates broad. Can it mean, well, it's a similar machine. Maybe we can assume that the information was similar and so, therefore, it could relate. It's not, as the government puts it in New Yorker cartoon. You know, it's not something that's, you know, totally has no bearing whatsoever on procurement or something like that, right? So, as a court, we need, you know, you need to decide whether relates in this particular context has that broad meaning or has a narrow meaning. Or a narrower meaning, meaning the information that's submitted in the procurement issue, which would be here, would be the SU-25. Why isn't that rewriting the statute, as the government says? This talks about the contract to which the information relates. And you seem to be describing, you know, for which the information is submitted. Well, I'm, you know, I could easily say that the government is redefining the statute to mean, you know, anything to which the information relates or to a similar, a procurement for a similar good or service, right? So, I don't think that answers the question. You know, relation can mean several things. It has a broad or narrower definition depending on the context. I don't think it's rewriting the statute to say here it has a narrower construction. And why that is the case, if I can just get to this, is really two points. First of all, it's narrow in other respects in terms of the temporal aspect. And second of all, we know this is not, this is a targeted statute. For disclosures that happen after her approach to armament, there's other permanent statutes that apply. 1905, in Title 18, disclosure of confidential information generally. So, there's no reason to think that Congress wanted to, you know, keep all information subject to a PIA prohibition forever depending on, well, in 10 years from now, a similar machine is being procured by the government. And so, all of a sudden, information that was sort of out of PIA's purview comes back into the purview of PIA because of some sort of similarity. And that also raises some serious concerns with regard to administratability and vagueness, frankly. I mean, the government here is saying that the SU-22, in the factual basis, says the SU-22 is a virtually identical machine. And so, therefore, it relates to the SU-25 procurement. But what about the SU-12? It's virtually identical, pertained to the machine itself or to the information? The information, Your Honor. Abacus makes that perfectly clear. Abacus was a civil case. It was a civil case. But in PIA, you know, there is a civil enforcement mechanism and a criminal mechanism, but relates is the same term applies to both. And it's, in fact, in the statute once. So, it must mean the same in both the civil and the criminal cases. The factual basis error rendered a defendant's guilty plea involuntary. This court has distinguished voluntariness from adequacy of factual basis. So, theoretically, you could formulate it in the sense of voluntariness, but this court hasn't approached the issue that way. Instead, the issue is, much like in a trial situation, was sufficient evidence presented to support each element of the offense? Now, on a factual basis, as this court has said in Sarafati and other cases, the judge need not be subjectively convinced beyond a reasonable doubt or anything else. But there must be a bare minimum sufficient evidence as to each element. And that's really what is critical here because we don't have the relation element that was established. We don't have the sameness that's required by Abacus. And, again, I would say, you know, the government sort of says, well, there's not a lot of case law. This is a very niche area of the law, right? But 100% of the case law supports our position in terms of the reading of relate. And it is from a court of specialized jurisdiction in PIA. And the prospect of sort of disrupting that, I think, is significant. This court is not likely to see another PIA case. It's never been prosecuted here. It's not something that's going to come up that often. But the Supreme Court has made clear that when we have courts of specialized jurisdiction, of course they're not binding on this court. But there are reasons of comity and reasons of continuity in the application of these specialized areas of law to adhere to the decisions if they're essentially a reasonable interpretation of the statute. I would submit here that is absolutely the case. The Court of Federal Claims doesn't have any expertise when it comes to criminal law, right? But relate doesn't have anything to do with criminal versus civil. That's correct. They don't do criminal law, but they do PIA. And so this court's doing PIA today in the criminal context. But deciding, you know, whether relate has a broad meaning or a narrow meaning within PIA doesn't turn on that distinction. It does seem rather complicated. And the argument that you're making is nuanced and refined. Why is any of that in plain error then? Because you need to show that as well. I don't think it's particularly complicated, Your Honor, to be honest. And, you know, this is not Java today. This is not, you know, five iterations of the statute over 100 years and every tool in the toolbox to get to the bottom of things. This is we have a Court of Specialized Jurisdiction that deals with PIA all the time. It's the only law on point. It says relation is a narrow term. And certainly relation, it could mean another context, broad, as Your Honors have suggested. But it doesn't necessarily mean that. So I don't think that's a particularly complex analysis. So for prong two, clarity, no contrary authority, specialized jurisdiction, I think those all weigh in favor of clarity in this case. And I would also add that, you know, the government hints at some sort of heightened bar for clarity, for factual basis error. That is just not the case. If anything, it ought to be the opposite. There may be an outlier case like Java today, but what we're talking about here is someone who presumably, if you're getting the clarity, stands convicted of something that's not an offense. That's a rather serious matter. Certainly correctable, as all courts say, on prong four. So I think the clarity prong ought to be wielded with some circumspection in that context as well. When we're looking at plain error, as with many things with statutory interpretation, we are looking first to the face of the text and if it's clear on the face of it. With that, I wanted to ask you about what, if anything, we should attach to the term the award in A1, which talks about the contractor bid, proposal information, or source selection information before the award of the federal agency procurement contract to which the information relates. What significance, if any, is there to that article? I think it is significant. I think it helps us. I think it focuses the court on a singular procurement. Now, this is an oddball case, really, when you think about it. Generally speaking, what's going to happen in these cases is that there's a procurement process, there are three bidders, and someone's going to take bidders one information and give it to bidder two information. So this sort of rather esoteric discussion we're having about relates is not going to come up because that's the standard situation. Here we have an odd set of facts, I'd say, where we have information from another bidding process, another procurement process that comes in. That's a bit strange. So there's no reason, in other words, giving relation the definition that I think is warranted under not only the text, but advocates and so forth, is not going to sort of upset a lot of HEA cases because this is a strange case. And to your honest point, again, D focuses on the singular procurement as does the legislative history. I'm not here to say the legislative history is some sort of slam dunk, but when you go look back at 1995 when this relates language came into the statute, Congress said we're not making any substantive changes. But the previous phrasing of the prohibition was during a procurement, a person may not disclose information regarding such procurement. So that does a lot of the work that D does in the present phrasing of the statute, and again, focuses the statute on the procurement at issue. If we were to vacate on plain error review, why is that reversal based on innocence here? So the remedy here, as I've argued, is judgment of acquittal, and the reason for that is that double jeopardy applies. We think of acquittal in the colloquial sense of a jury's verdict. Well, the Supreme Court has made very clear that that is not – that acquittals for double jeopardy purposes are not limited to jury verdicts. So in Evans, the Supreme Court said any ruling approved is insufficient to establish criminal liability for an offense. So if this court reverses for plain error, it will be finding that the evidence was insufficient to support a conviction for PIA. That's exactly the definition of a functional acquittal that the Supreme Court has given us. So if this were some Rule 11 error, other Rule 11 error, I didn't – the judge didn't inform about the trial right or anything else, that's not a double jeopardy problem. That is procedural error, sometimes called in other contexts trial error that does not have double jeopardy implications. But mistakes as to the sufficiency of Evans have consequences, special consequences in our system, and that is the barring of further prosecution. And that's exactly what would be happening here. If this case had gone to trial, everything else is the same. A Rule 29 motion would have been made, or it may not have been. When it comes to my office, it would have been raised on appeal as sufficiency, and there's no question that double jeopardy would have applied. That's not the exact same situation happening. But if this interpretation of related to had been raised earlier, that would have given the government the opportunity to put in other information and evidence as a factual basis for the plea, right? That's correct, Your Honor. And if we – as the court recently pointed out in the William Washington case, if a party would have moved for a motion to dismiss before trial instead of waiting at the gotcha moment at the Rule 29, the government could have fixed its case too. But that's not the responsibility of the defense to do. We're not – the defendant has no obligation to point out factual – But since it didn't have the opportunity to do that, how do we know that this is a case where a defendant could not possibly be found culpable? Well, that – actually, we don't know that, but that's not the task. So after trial – let's, again, go back to a sort of more familiar context. After a trial and after a not guilty verdict, we don't know that the defendant could not possibly – that he's innocent in the sense of some sort of platonic innocence. We don't know if the government has other evidence. I suspect after a not guilty verdict, the government goes back to itself and says, geez, maybe we should have hired – put that expert on the stand or maybe we should have called this additional witness. There's no not guilty or, as the Supreme Court talks about it, a ruling – a not guilty verdict or any ruling that the proof was insufficient is not – doesn't speak to innocence writ large. That would make sense if what we were talking about was that as a matter of law, if what was required here was that the information be only information that was submitted for the pending procurement contract. And we have here the past – submissions for a past contract. Then that would be legally – she would necessarily be innocent, right?  But you've asked us to adopt a different interpretation under abacus that would include things that are exactly the same or similar. And that the government has not had the opportunity to address or put in evidence that would show the similarities between the two submissions, right? The government had the opportunity to research the statute before the plea hearing. It had the opportunity to present an actual – a factual basis that actually met the legal standard. So it had every opportunity. Yes, we haven't – they were not alerted to their mistake until appeal. Just like the government, a trial is not alerted to its mistake until the Rule 29 after the evidence closes. That doesn't mean they didn't – that doesn't mean they get a do-over, right? And so when – on double jeopardy, the government has argued relying on Greene and Rhea as the Fourth and Eighth Circuits, as I take it, the government's argument is basically, well, this was legal error. This doesn't have anything to do with guilt. And so therefore double jeopardy is not implicated. The problem with that is that the guilt question often turns on the interpretation of a statute. So there's two ways evidence can be insufficient. Everyone agrees and has the correct understanding of the statute, and the evidence just doesn't materialize. The witness goes south, who knows what, whatever. The evidence is just insufficient. But the other way that evidence becomes insufficient implicating a double jeopardy bar is if the government misunderstands the statute and therefore puts on evidence that it thinks is sufficient but actually is not. So when that happens, two issues go up on appeal, typically. The legal issue, which in the trial context is instructional error, and a sufficiency issue. The evidence presented at trial is insufficient. And when that happens, this court must reach the instructional issue, I'm sorry, the sufficiency issue cannot be pre-permitted. It must reach sufficiency, and it cannot reverse for instructional error and send it back. So if the evidence is insufficient, that's it. There's a double jeopardy bar. The same is true here. So we have, yes, we have an evidentiary sufficiency that is grounded in a legal mistake. And Evans, of course, makes clear that legal mistakes have no bearing whatsoever. To your point previously, Judge Krause, how do we know that for sure she wasn't innocent? The defendant in Evans was guilty of sin. Everyone, the Supreme Court, everyone recognized throughout the appellate process that that judgment of acquittal was entered in mistake. The judge misunderstood the law, required the government to prove things it never really had to prove, but none of it mattered. So actually legal error doesn't play into the double jeopardy analysis. Let me make sure we understand the test that you're advocating for. You pointed to abacus. Abacus talks about things being exactly the same. Is that really the test that you would say is encompassed by this statute? It is, and it doesn't sound – I sense a suggestion of craziness in that, positing that. I would suggest it's not crazy. It actually does make some sense, and I think that is the rule. It's the rule that comes out of abacus, and here's why. When information is the same, that means it's been, as the abacus court says, it's been resubmitted in the second procurement. So in diaphanos 1 and 2, in abacus here, SU 22 and 25. So if it's the same, this is where the government accuses me of rewriting the statute by saying the word submitted. But that just means – it comes right out, abacus resubmitted. That just means if it's the same information, it's been resubmitted in SU 25, and that boils down to – PIA covers information that is submitted in the procurement, right? So now we're not saying that it's some crazy thing like, hey, if there are typos or if it's formatted differently, if the information is formatted differently, somehow that's not the same. So it does need to be substantively – I don't know what words you want to use. It could be substantively identical. What is it that needs to be the same? Because when we're talking about an iterative process, which is often the case with procurement contracts over time, there may be things that are submitted that are identical. There may be things that, because someone didn't get the bid the prior time, are completely different. And there may be those things all within the same submission. So what does it mean for the submission to be the same? Sure. I think what it means – and, of course, we don't have a record here. So we can't say this was the same or that wasn't the same because we have nothing to look at, which is the problem, which is why I should go back at least for an actual factual basis that fits this crime. But just hypothetically, sort of conceptually, what does the same mean? I think it – you know, here it would be sort of they talked about pricing information and they talk about specifications. So if the pricing information is the same, substantively, you know, advocacy is exactly the same getting to that point that it really needs to be submitted in the instant procurement. But if the pricing information is the same but the technical specifications are different, I think that would probably – you know, I think you could probably break it down by category. It doesn't necessarily – you know, if they have a cover letter on the SU-22 submission but not on the SU-25 submission, I'm not going to be in court saying that's different. Right? And so at some point along the line – and I don't think the court can really draw that line without a record. At some point along the line, there has to be some sort of functional judgment made about whether this is the same information or not. Is there a materiality component to that? Well, it – well, I don't think so because here's why. You know, pricing information is going to be material in SU-22 and both in material to contract in both procurements. It could be wildly different. And so that's not the same. So just because it's – Right, but again, you can't – just if we can move past this because you get the argument of submitted and identical, submitted, the same information, let's suppose we don't think that that's what related to means. Let's suppose we think it's not quite that much of a Xerox copy. What is your argument then? Well, I'm not – just to be clear, I'm not arguing the Xerox copy. But if it is – you know, if it just means, you know, it's not the New Yorker cartoon, we lose. Right? So I'm not – I can't defend that. Right? So it has to be – you know, like I said, if it doesn't have to be exactly verbatim, letter for letter the same information, which is not my position, then I would think it would be some functional test of substantially the same. Now, substantially identical. Now, you say, well, what does that do? Those are just more words, but, you know – The only place you're getting substantial from is from the case law, not from the statute. Right? Just so I understand how we're getting there. Right. Yeah, I mean, you're saying what test would we apply. I mean, you know, relate, you know, we have the word relate. And so the debate here is about what relate means. I'm not running away from that. The factual basis for the plea at page 35 said, with the competitive advantage of having company choose proprietary information relating to its bid for a VTC contract. If it had just simply said relating to SU-25, is that enough? In other words, I think that's what the party thought they were pleading to here. I understand that there is this problem now that's been discovered in hindsight that relating to may not – But I think if you change that, what's the difference? Does your argument still hold or do you agree, yes, that's probably a sufficient factual basis? It's not because that is just the government's characterization of – that's like the government saying here what relate means. The issue is what is the actual information, right? And so the factual basis makes clear whether it said it relates to whatever this, that, or the other thing. The factual basis makes clear that it was information from the SU-22, right? And so my argument is relate under abacus, under the context of the statute, and really just from a bright-line administrability perspective has to mean information that was submitted in the procurement of issues. That's not rewriting the statute. That's defining relation in context. The government says, no, no, no, no, relation has to mean anything short of the New Yorker. And I don't think that's a defensible reading of the statute in the context here. So if I may just touch on, Tashmina, your point about what's in the factual basis, if we get to something aside from the meaning of relates in the statute, it's, I think, perfectly clear that if, under my definition, the factual basis is inadequate, the government says they win even if abacus is the law, right? Because they say, well, you can infer that the information actually was exactly the same because the machines were virtually identical. And so I need to push back on that because, first of all, on the factual basis, if there's any inference to be made, it's the opposite. The two categories of information that were submitted both in SU-22 and 25 were price and cost information and technical specs. And that's from the factual basis, right? And so what we also know from the factual basis, this is the world, right? It's the four corners of the factual basis. What we also know from that is that the SU-22 was a $10 million contract and the SU-25 was a $15 million contract. The natural inference there is that the cost and pricing data was actually different in these two procurements, right? Technical specifications, the other category. What we also know from the factual basis is that Company 2's SU-22 bid was deemed technically insufficient, technically forget it. It doesn't qualify. You haven't met the minimum technical requirements for this machine. So the inference there, if Company 2 wants to bid and have any chance of success on the SU-25, is that those technical specifications are going to be different as well. They already failed on the SU-22. So really the natural and the only inference from this factual basis is that the information is different. Now, the factual basis was not built to show or disprove sameness because the government still doesn't believe that's what the statute requires, right? And so it certainly didn't think below. So this factual, I'm not trying to suggest to you as clear as day that this is different information. I'm saying the best inference from this factual basis that was never built to show the requirements of the statute is that the information was different. That's why a remand should be had at the very least. Even if the judgment of acquittal is not something that the court finds persuasive, at the very least, this case needs to go back to have a factual basis, a sufficient factual basis, and to permit Ms. Huster to look at those facts and decide whether she really wants to plead guilty under a proper understanding of the statute. Thank you. Thank you. Rebuttal. Mr. Lapin, good afternoon. May it please the court. Lou Lapin for the government. The record in this case is very clear that Judge McHugh did not commit any error, much less plain error, in finding a factual basis in this case. Your Honor is focused on, your Honors are focused on the language of the statute here. The government had to show that this information that the defendant provided, she did so before the award of a federal agency procurement contract to which the information relates. And relates is the key word here. And what shows this more than anything, which the defense really wants to ignore in this case, is the actual underlying facts to which this defendant pleaded guilty. And those facts were, this defendant was doing everything she possibly could to violate this statute, everything she could to try to help this favored company, company number one, win a contract in what was supposed to be a fair and honest bidding process. She went out of her way, going all the way back to 2017 for the first contract, the SU-22, to help company one win the contract. She drew up the specifications in a way that would help company one win. We see her criminal intent there. And then when we get to the contract at issue, the SU-25, she arranges to have it be a, what was technically a sole source contract, but others were like. I mean, we're familiar with the record. Why does any of that matter? How does that help your definition of relates? Because it shows that the reason she did what she did. She was unsuccessful in doing it. If she transmitted something that everybody agrees is wholly unrelated, right? No. Her intent may have been as malign as possible, but if she said that something that everybody agrees has no relationship to this piece at all, well, that couldn't matter. I think the record actually, respectfully, Your Honor, is the exact opposite, which she submitted absolutely related. But that's what I want to get to. I understand that. But your first point is her intent. Let's leave that aside. Focus on why this is related to under the best meaning of the statute. Because the machine, the SU-22 machine, company number two's SU-22 machine, the government described as virtually identical to the SU-25 machine. She submitted the most confidential technical documents relating to the SU-22 machine, which included pricing information, technical specifications. Virtually identical. 50% similar? 70% similar? 98% similar? How do we know what that means? I like to think my cooking is virtually identical to a five-star chef, but it's not, right? Or maybe it is. We don't know. The problem is looking at this record, how do we know what virtually identical means other than there's some similarities here. They may be all but one or they may be 87%. This is fairly technical stuff. So virtually is doing a lot of work here, right? Virtually identical is doing a lot of work, but it's very different from saying there are some similarities. Virtually identical under ordinary English definition would mean something that's practically the same, and that was what the case was. These machines were practically the same. This was the company number two's version of a five-axis vertical turning center, and that machine was the same as the SU-22, as the SU-25. They just needed, the government needed another machine. So it's a virtually identical machine. And at the moment when she thought company number two was bidding on the contract and she didn't like that because she only wanted company one to get the contract and only company one to bid, she said, I'm going to teach company number two a lesson. But she didn't send them the SU-25 submission, right? She sent them prior data, and we're trying to ascertain whether that prior data is related to the data submitted for SU-25. So the machines may be virtually identical. They may be identical. What do we have in the factual basis for the plea, in the agreement or what was said in the call plea, that indicates that the prior submission, the information that was submitted, is the same? Well, again, on page 34 and 35 of the appendix, we explain that the company number two submitted a proposal for the SU-25. Page 34, company two submitted a proposal to DLA to obtain the SU-25 contract providing technical specifications and pricing data. And then we say that all of this information related to machines that were virtually identical, the SU-22 and the SU-25. But isn't it a fair inference that if someone didn't win before that they would revamp their submission so that it's different than their prior submission? I think, again, let's take – I would take one step back and say, again, we are on plain error review here. So did Judge McHugh commit a clear and obvious error? We are also entitled to reasonable inferences from the record in a guilty plea proceeding. And we're entitled to a view of the facts in a light most favorable to the government. This was not a trial where the government submitted all the evidence that it had. We summarized the facts, and it's a very reasonable inference to conclude that when we use the words two virtually identical products, when we explain the very technical nature of the information that we – that the – that has been submitted by company number two in order to get this contract, technical information, pricing, manufacturing techniques, source selection information, and we say those machines are identical and that the information they're submitting is the same type of information, then under any definition of a broad word like related where a defendant like this one is trying to help company one win the contract, she is providing to company number one information that is clearly related to the ongoing bidding process. She says as much. I'm – I want to stop this from happening. I'm going to give you, essentially, the keys to the kingdom to this product that company number two has spent years and years developing. That's the product that she is – that is now, again, being submitted to the government. We want the government to use this product. We want a contract for this. Is there anything in the record that indicates whether she had received a company two's submission at the time that she sent their SU-22 submission? She had received company two's submission. That is correct. And there's multiple ways one can commit crimes. And she could have – certainly could have sent them the current submission or she could have sent information that was extremely similar and related for whatever reason. And she did it – and she did that. And, again, on this record, it is not – it does not come close to plain error for Judge McHugh to have heard these facts and concluded that the government was presenting sufficient evidence to prove the elements of this offense. Those facts are reviewed and alight most favorable to the government, and we are entitled to reasonable inferences. I understand this court could – there are other scenarios that could have occurred, but that's not what the facts say and that's not those – the reasonable inferences that this court – that the district court was entitled to draw from that lead to one conclusion, that this defendant – and I think intent matters – did exactly what she was trying to do. She helped company one win this contract by giving it company two's keys to the kingdom for a virtually identical machine to the machine that was currently being pursued in the SU-25 contract. When you say that we look at this and alight most favorable to the government, we don't have here findings by a trier of facts. This isn't after a jury trial. Doesn't Steph Reddy tell us that we're reviewing for abusive discretion? It's not drawing – looking at these facts here in alight most favorable to the government? Well, I mean, that's the standard for any sufficiency review, I think, is in alight most favorable to the government. But in any event, certainly we're entitled to reasonable inferences from the record, and the reasonable inferences here are that we are talking about material that clearly has to relate under the broadest definition – under any definition of relate. And again, what the defense wants this court to find is that this is plain error. There was no objection. Nothing was raised in the trial court. Had the defense raised this issue, we would have – we could have explored it further if it was necessary. But the defense – the defendant admitted to all this conduct, admitted that she did all this in order to provide a competitive advantage to company number one to win this contract. How can she possibly be providing a competitive advantage to company number one by giving it information that doesn't relate to the current SU-25 contract? It goes almost without saying, when you look at this record, the only reason that she could be giving this information to company number one, which she herself said was the reason she was doing it, was to help them win the contract. That information, under any definition of relate, relates to the SU-25 contracting process. So other than the fact of her sending it, what do we have in the factual basis for the plea in this agreement that does any comparison at all between the two submissions? We didn't pull out the 31 pages of extremely complex data and talk about how this piece of equipment is a quarter of an inch and that piece of equipment is an eighth of an inch and you mix it all together in a certain way. I mean, this is – this would not be anything, honestly, that we would ordinarily do in a plea proceeding. We described the facts generally and said this is – we said essentially this is the same information because we said it's the same product and it was the same type of information that is submitted. That is, bidding information, pricing information, confidential technical details about this company's very special version of the VTC. So is the test that the government would have us adopt one that equates the concept of relates to provides a competitive advantage? I think that's one way of looking at it, but I also – again, I would start by saying I don't think that this court has to come up with a test because the standard here is was there plain error in the application of this statute? And as I've argued, there can't be. But if this court goes one step further and wants to actually address exactly what is the meaning of relate as if this were not on plain error review, then it has to be some kind of meaningful connection. And this court defines broad terms in many kinds of different cases, in cases using words like relate, and obviously there has to be a meaningful connection, which here can include the fact that she is trying to create a competitive advantage in what is like the, of course, opposite situation that we have in abacus. And I want to make sure that I do have an opportunity to talk about that because that case does not come anywhere close to what the defendant says it stands for. Abacus involved an accidental disclosure of extraordinarily generic information, which was labor categories, things like IT manager, program manager, project manager. That's all that was ever disclosed. And then the court decided the case on a number of different grounds and then has a single defendant is hanging his hat on a single paragraph, two or three sentences, and saying essentially that this abacus court is rewriting the statute, ignoring the plain meaning of the word relate, and saying that the word relate should be replaced with submit. And he relies on the language that says Valdez labor categories relied only to the IOFNOS 1 procurement. Valdez has not argued that it used exactly the same labor categories in its proposal for the number 2 contract. PIA doesn't apply. That is not a holding, Your Honors, not a holding that here's what relate really means. Relate means you have to submit exactly the very same information. It means under the facts of this case in which this was very, you know, generic information, under those facts we can't say that this relates. Our case is entirely different. We're talking about the same machine, we're talking about very technical information, and we are talking about intent, which also matters. And it shows that it does relate. So there was no holding, there was no statutory analysis whatsoever. I can't imagine that if this court were writing an opinion on the reach of this statute, it would have one sentence that just says, well, right here, under these facts, the same labor categories weren't used. That's not a statutory analysis. As the defendant has argued repeatedly, we're supposed to defer to this court that has expertise. There is no expertise on display here. Nothing wrong with the court, but that's not what they're doing. They're not demonstrating any kind of expertise and coming up with an analysis that undermines the plain meaning and the intent of the statute. What else is this statute here for other than to stop the defendant from doing, in this case, exactly what she did do? Provide a competitive advantage. Undermine a fair and honest procurement process by providing the keys to the kingdom of one company's VTC to another company that is bidding on the same, virtually the same product. This is not, as Judge Mady suggested, our best shot at a little recipe here. This is virtually the same product, and these are highly technical specifications for that project. So abacus is easily distinguishable. We don't have a meaningful connection between the generic information that was submitted improperly and accidentally disclosed. It was an accidental disclosure. And even if the defendant's reading were correct, I think our factual basis does show that there had to be some aspects of the materials that were submitted that were the very same. A machine where you're providing all of the technical specifications from one contract to another contract, there's going to be a lot there that is the same and the same in a meaningful way, as opposed to a list of jobs like program manager. That may be, and that's one inference, but there's also an inference that someone who loses a bid is going to radically change their submission the next time around to try to win, right? But I think the reason, but again here, if we look at the standard of review and the reasonable inferences that we are McHugh committed clear and obvious error by drawing the inference that followed from the language in our plea memo, and the defendant's essentially standing up who knows more than anybody about what happened, because she's the engineer, she's the project manager here, she's the lead. She knows what's going on, and she said in court, this is what I did. I gave away the information that related to the later contract, and I shouldn't have done it, and apologized for it when she was sentenced, which is all part of the record, making clear that what she gave away was information that clearly related to the ongoing process. There would be no other reason for her to have done so. And so again, if we look at this on plain error review, there is no way that we can say any kind of error comes anywhere close to being clear and obvious. Looking also even at the additional prongs of plain error review, this did not affect her substantial rights. The record reflects she was going to plead guilty regardless. If we had to get into a couple additional details about the nature of these products, we would have been able to do that. She didn't raise that objection. There is no showing that she's in any way, shape, or form actually innocent, or that the fairness, integrity, or public reputation of the judicial process would be questioned by her plea here in this court accepting that there was a factual basis. Is there any court? I mean, we have from the Court of Federal Claims. We have Abacus. We have SIGOM Security. We have Insight Public Sector. We have a case from the District of Colorado, Jupiansky, that are all concluding that you can't violate this statute to assign information on that was submitted for past contracts. I think those cases like, in part, a different section of the Abacus opinion refers to information that's submitted and then accepted. So in the Abacus case, Valdez was the winning bidder, and I know there was a finding in Abacus under Michco that as the winning bidder, this information was no longer considered prior bid information. Instead, it became something else, which is information that is generated during the course of a contracting relationship. But here, the defense hasn't cited cases that say there's no circumstance under which information from a prior bid can be considered to be related to a current bid as we are arguing here. Well, the Colorado case talks about not being able to violate the statute based on information about an already awarded contract. I guess my question is, when we have what appear to be three cases from the Court of Federal Claims, we've got granted a district court case from Colorado, is there any authority on the other side that indicates that information that had been submitted in connection with the past bid, nonetheless, is related to the pending bid for purposes of this statute? Our understanding is the only case that came close to addressing this, and we say it doesn't, is, of course, Abacus. And there is no case that takes head-on this issue, whether somebody in the position of the defendant who is providing information from a prior bid to try to help a company win the current bid and is providing information that is virtually identical to the information that was provided earlier and that is virtually identical to the information relating to the second bid. There's no case that says that that is not related. In fact, again, based on the plain language of the statute and the standard of review here, this court should find that there is no plain error and that the court... I just want to clarify something because maybe I missed it. Did you just say that the bid information was virtually identical to the first bid information? I thought the government's... I thought the statement at the factual basis was that the machines were virtually identical and that we didn't know what was similar or dissimilar about the information. Because the machines were virtually identical, and this is important to explain. Because the machines were virtually identical, so we're talking about a very particular propeller-making machine that Company 2 manufactures. And they manufactured it in 2017, and they manufactured it again in 2019. It was for them, and this is what virtually identical meant. It's the same machine, meaning it has the same parts. It is built the same. That providing information about the technical specifications relating to that machine, the source selection information, all the technical details, and pricing. Although pricing can, of course, change, but that information certainly, in its technical details, our position is, would be virtually similar, virtually the same, as what was submitted the first time. So we are talking about the information. But it's a fair inference. I mean, I think we all agree. We don't know that from the record. If we did, we wouldn't have this case. But what the United States argues is, look, it's fair inference that if the whole point of this scheme, as acknowledged, was to provide competitive advantage, and the machines, everyone agrees, are virtually identical, then it's a further fair inference that what was disclosed must have been substantially similar, virtually similar, virtually identical, sum it all up as related to the second bit. And that's all that the United States had to prove. That's correct. That is correct. And that is what the record reflects. Those are the inferences that we're entitled to, especially when we're talking about a plea proceeding, and this is not a full-blown trial. So say we have a bidder who is unsuccessful in their initial attempt to obtain a procurement contract. The second time around, the product in question is identical, not even virtually identical. It's the same thing that the government wants. But they've put it out to bid again. And this time, that bidder revamps their proposed specifications. They change their pricing. They find other sources of material to try to make their bid more competitive. That's the information that is disclosed when – sorry, it's the initial information that ends up being disclosed. Is it your position that if someone sends that out intending to provide some competitive advantage, even though all of the specifications, the pricing information has all been changed, that it relates to the pending procurement contract? Correct. Under the facts of this case and the procedural posture, the answer would be yes, it would relate. Because the defendant would be trying to provide a competitive advantage by giving information that's clearly related to an ongoing bidding process. That's what makes it criminal. But as we're looking at 2102, would that be sufficient to satisfy the relation requirement? We look at all the facts and circumstances in the context, as the defendant himself, the defense counsel says. We want to look at the context of what occurs. So yes, the context of what occurs matters, both as to the word relate and to the other element of a competitive advantage. But most importantly, I would not – or the government would not describe those two machines in your hypothetical as virtually identical. Because if the specifications had changed for those machines, they would not be virtually identical machines. That's what they were here. That's what we were conveying when we called them virtually identical. That's about as close to identical as you can get. Virtually identical. That means substantial aspects of the machine are exactly the same, so that the company receiving the information about its competitor's virtually identical machine is gaining a substantial advantage. And the whole contracting process is being thrown out of whack by this defendant because they're able to see exactly what they're competing against. I'm not sure I understand. I thought the point here was that the government set out certain specifications for what it wanted for the lathe, in this case. And then we've got different bidders that are putting in their submissions and how they construct it and how they're putting it together in their own proposals to meet those specifications, but also with however they're going to build it themselves. That is information that is proprietary. Obviously, everyone knows what the government is asking for, right? That's the nature of a bid solicitation. Everyone knows what the government is asking for, exactly. But what the company provides is what is proprietary. But what the factual basis says is that the Company 2's machines were virtually identical in the SU-22 and the SU-25. Suppose Company 2 makes another product. Call it a widget, but it's a very technical and specified, you know, specialized widget, right? And an actor wanting to give a competitive advantage to Company 1 sends Company 1 the pricing data, cost, proprietary information about manufacturing techniques, bid price about Company 2's widget. It does so under the thinking that you'll understand the way they think about building complicated materials. You'll understand where they're sourcing materials from. You'll understand what their price markups are. And it's not at all related, right? It's not only is it not virtually identical, it has nothing to do with the VLT. Could that, in your view, be related to the contract? I mean, that would have to be, it has to be bid or proposal information or source selection information. So the statute is also confined in that way. So it has to be bidding information. So no. It has to be source selection information, and it has to relate to the award of a federal agency contract. So no. I think your answer is no, then? I think my answer is no. Okay. Because I'm trying to just understand how much this virtually identical thing phrasing in the factual basis is supporting your argument, and I think substantially, right? Because that's where you're hinging it. It's not any old information that, sure, some smart economists or accountants in the manufacturing department might be able to say, look, I can do a reduction analysis and figure out from all of this lots of competitive information. That's not what this is. It's got to be the related to has to be because of the relationship between the contracts, which the United States says is shown by the virtual similarity of the two items that are being bid. Correct. And the similarity, the virtual similarity of Company 2's machines, that their SU-22 and their SU-25 are virtually similar machines, and that the information that they provide that relate to those machines, therefore, is also virtually similar, and therefore, the information that the defendant disclosed to Company 1 to help it win the contract, that information was related to the ongoing bidding process. I just want to make sure, looking at where the factual basis talks about being virtually identical at 33 to 34, it's talking about solicitation for a procurement contract for another VTC that's virtually identical to the SU-22. So that's what the government is putting out as what it's seeking for the VTC, right? That doesn't – that's not telling us – I thought – maybe I misheard you, but I thought you said a moment ago that what was virtually identical was the specs that were being submitted by the contractor the first and second time, but that's not what appears on 33 to 34. Is there someplace else that talks about the actual submission of the second contractor? Well, that is – I am talking about both. The specs are the same, but the machines that Company 2 provided information for was virtually identical. That was their version of the same machine. That is what is a reasonable inference from this discussion about providing information about a virtually identical machine. But I understand your point. I'm not sure I follow. When the government puts out a request for a virtually identical machine, the information we're talking about, right, as defined by 2101, the contractor bid or proposal information, are things like cost and pricing data, indirect costs, indirect labor costs, proprietary information about manufacturing processes, operations, techniques marked by the contractor in accordance with applicable law, and information that the contractor has designated as contractor bid or proposal information. I mean, that – isn't the question, what do we know about those things that is the same or similar between the – or gives – where there's some relationship of what was submitted in terms of the cost, pricing data, labor rates, and proprietary manufacturing processes between SU-22 and SU-25. Right, but because these companies were making their version of the same machine, the implication is that we are talking about company one had a version of this machine, company two had a version of this machine. The difference between the machines in 2017 and 2019 was not significant. It was not – they were not significant differences. These are their machines. This is how they make five-axis DTCs. So, yes, they were – there were specific specifications for that put out by the government, but there are ways in which these companies meet them by their confidential proprietary products that they've spent years developing. And what we're talking about here is company one has a version of this, company two has a version of it. There was one in 2017, one in 2019. They're virtually identical, and that's why the defendant did what she did and said she did what she did. And I do think that what she says that sets forth in the factual basis how angry she is that company two is bidding on this and that she is therefore showing her loyalty, her words, to company one and sending them this information right before company one has to bid is what shows how related that information is in this world, which none of us exist in. But that's the world, and that's the world that we presented to Judge McHugh, and to say he made a clear and obvious error by listening to these facts and not saying, oh, my God, this can't possibly be related. There's no factual basis. That just cannot be the case. On these facts and under this standard of review, we have submitted a sufficient factual basis, and the court did not plainly err. I want to just ask you about the question of affecting substantial rights. The government asked us to adopt the majority view in Dominguez Benitez. Why doesn't the Tenth Circuit have it right, given that there's an independent duty on the part of a district court to ensure that there's a factual basis for a plea? If there's not a factual basis for a plea, doesn't that necessarily affect substantial rights? And if not, why not? Well, Dominguez Benitez says specifically that when there is a change in the law – I'm sorry. Dominguez Benitez says when there is a guilty plea error, there's an error in accepting the guilty plea, that the government – that the defense has to show prejudice, has to show that there's substantial rights were violated, a reasonable probability that but for the error, the result of the proceedings would be different. That is, but for the error, she would not have entered a plea. That's what Dominguez Benitez says, and it doesn't restrict its holding to errors under Rule 11B1. It also applies to errors where there is a challenge to the factual basis, not just to errors in warnings to the defendant. So Dominguez Benitez, on its face, says when there's a Rule 11 error, then we need to look at the substantial rights question and see what the defendant has. But isn't the analysis a little different? I mean, yes, the defendant has to show that they wouldn't have entered a plea, but where they couldn't legally have the plea entered because there's not a factual basis for it. Doesn't that necessarily mean that substantial rights were affected? Well, if there were – if this court were to find there was no way that this defendant could have committed this offense, that is, the most extreme reading that the defense offers here, there's no way these items, the information that was provided could ever be considered related. So under those circumstances, then it would be clear she would not have pled guilty because there was no – she could not have committed the offense. But where the record suggests that with the government presenting any additional information clarifying the record, she would have pled guilty, which is what's clear from the record, her admissions to what it is that she did, and expressions of remorse and everything that is shown on the record that she knew she was not supposed to give away this information, that it related to the ongoing contract, then we should follow all the courts that have followed Dominguez Benitez and require the government – the defense to show that but for this error she would not have pled guilty. Well, I understand your answer. You're bringing it back to the facts of this case and saying here there is a factual basis, so not a problem with entering the plea. But I'm just asking you in the abstract as we think about what is a circuit split, albeit lopsided, and what it means to affect substantial rights in the context of B3. If there is not a factual basis in a given case and the district court has nonetheless entered the plea, is there anything that a defendant needs to show beyond that there wasn't a factual basis to show that there is a substantial right? I think there's a difference between whether there is something lacking in the factual basis and there is something that – and a situation where we can say without any question there could never be a factual basis. So I think it does depend on the case. But here under these facts, I understand your honor is going beyond that. Are there circumstances – I think it's a case-by-case basis whether or not what you find is a situation where there's no chance that the defendant would have pled guilty or if the defendant fails to sustain her burden based on the record, not just that there's not a factual basis but that there's nothing in the record that would show that she would have pleaded guilty despite whatever might be technically lacking. I don't think that this court should diverge from all the other courts that have followed Dominguez Benitez and said there needs to be this showing. I understand in many cases the defense would be able to sustain its burden where there's a factual basis that is lacking. But here based on – in our case where there's enough to show that this defendant would have pled guilty regardless, that this court should follow Dominguez Benitez and not the Tenth Circuit opinion in Carrillo. Okay. Thank you. Thank you. Thank you, Your Honors. To satisfy the case law, let's just stick with the case law for the moment. The government agrees, concedes that they need to show that the information is the same, not just the machines. So they make the inference. They're asking you to make the inference from machine to information. The court, with all due respect, cannot do that here. We have $10 million, $15 million, technically deficient and unacceptable and presumably something that they wanted to be acceptable. That inference is not supported in any way by this factual basis, no matter how many times we hear about keys to the kingdom, which isn't in the factual basis or anything, any other rhetorical flourishes like that. Instead, what happened here is this is all backfilled. These strained inferences are all backfilled. The wrong statute was charged. This was probably a 1905 case, which doesn't depend on the timing of the disclosure or which particular procurement happened. That's a general Title 18 offense for disclosure of confidential information. No one looked at the case law below, and now the government shouldn't be bailed out for that on appeal. That's really the bottom line in this case under the case law. If it in fact provided a competitive advantage to Company 1, and the basis for the plea includes that on or about September 22, with the competitive advantage of having Company 2's proprietary information relating to its bid for the BTC contract, Company 1 submits its proposal, and Company 1 succeeds, why isn't that enough to show that it's necessarily related? Okay. Well, that gets us to the case law and why I would urge the court to stick with the case law, which is not the test is competitive advantage. It is, in essence, is it submitted in this procurement or not? And it's because really fundamentally a bright line is very important here. These are mostly civil cases, right? So the government trains all of its employees on procurement integrity and everything else. And is the standard going to be, well, what you can disclose is something that a company might think would help them in their bidding process, or is the prohibition, you know what, we're in the SU-25. If any information is disclosed in this SU-25, you cannot disclose until the award of the SU-25 contract. That's what the case law says. That is very clear. And some other, whether we look to Judge Mady, you said, well, there's a limiting principle in virtually identical machines versus totally unrelated widgets, or whether we look to, hey, this could be a confident, this could give a boost, a competitive boost to the other company. These are all mushy lines that are not, first of all, have not been adopted by any of the authority in this area. And are, like I said, really inadmissible. And so when we go back to the case law, and I would submit creating a split here would have significant ramifications and sort of unfortunate consequences, right? Because a civil enforcement action is not going to lie against someone who submits SU-22 information or old information from a previous procurement, but yet, at least in the third circuit, maybe in another court, if another court follows this court in going down that path, a criminal liability would lie. That doesn't really make any sense. If anything, it should be the opposite, right? The criminal standard is higher. So creating a split of authority, you know, I think has some negative consequences. Aside from the fact that, you know, you cannot, I would submit it's very difficult for either a defendant, whether you frame it in terms of vagueness and constitutional avoidance, or whether you frame it in, you know, from the civil perspective and just administrability, what we have in the case law already is a bright line. It is whatever you might say about it from a policy standpoint, it's not inconsistent with relates. Relates may mean broad, not necessarily. It may mean narrow. All of the case law says in this particular context, P.S., it means narrow. The error below is nobody looked at the law. And so now we have the law. We have, you know, I've argued that this case really should not go back for a second flight at the apple, but even if the court disagrees with that, at the very least, it needs to go back with a proper understanding of the law for a factual basis. Thank you, Your Honors. We thank both counsels for an excellent and informative argument this afternoon. We ask that a transcript be prepared, and I will put out that order to follow.